DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JUAN DE LOS RIOS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-2021

[ May 25, 2016 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lynn Rosenthal, Judge; L.T. Case No. 12009704CF10A.

Michelle Walsh of the Law Offices of Michelle Walsh, P.A., Miami, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Juan De Los Rios, a former captain with the Miramar Police Department, appeals his conviction and sentence for lewd or lascivious conduct on a person under the age of sixteen. We affirm on all issues raised in this appeal, and write only to discuss appellant's argument that the trial court erred in allowing the prosecutor to elicit testimony from the victim's sister that the victim told her about the incident that led to these charges and that she urged the victim to tell their mother. Appellant contends that this testimony was inadmissible hearsay that improperly bolstered the victim's credibility. We disagree and affirm for the reasons discussed below.

On January 18, 2012, the victim's boyfriend picked her up from school when her school day ended at noon. Her boyfriend drove them to the Fountains of Miramar and parked in a nearby lot. They moved to the backseat of the car and began talking, kissing, and holding hands.

While the couple was seated in the backseat, a police officer approached the car. The officer first went to the boyfriend's side of the car and then

around to the victim's side. He tapped on the window and asked the victim to open the window.

The officer asked them what they were doing there. He checked their identifications and warned them that the boyfriend could be arrested for his relationship with the victim. At the time of the incident, the victim was fifteen and her boyfriend was nineteen. The officer asked them if they were having sex. When they denied having sex, he ordered the victim to turn towards him and pull down her pants and underwear. She asked him "why?" and he responded that he wanted "to see if anything was coming out" of "her genital area." She did as she was told because he was a police officer. He took his flashlight and pointed it towards her genital area. He looked at her for a few seconds and then told her to open her legs wider.

After the victim pulled up her underwear and pants, the officer returned their identifications and continued the conversation. When the officer left, the victim and her boyfriend both began crying. They returned to the front seat of the car, and the victim's boyfriend drove her home.

A few days later, the victim decided to tell her sister about the incident. Although the victim told her sister that she did not want to tell their mother about what happened, the sister insisted that they tell her. They did, and afterwards, the victim, her sister, mother and stepfather, and her boyfriend and his parents all went to the police station to file a complaint. Both the victim and her boyfriend identified appellant from a photo line-up as the police officer who approached them in the parking lot.

The victim and her boyfriend also identified appellant in court. The state offered into evidence a surveillance video that showed the boyfriend's car entering the parking lot on the afternoon of January 18, 2012 and a person approaching the car. The person walked to one side of the car and then to the other side. The image was too blurry to identify the person's face or any gestures. The person stood by the car for a few minutes and then left. The boyfriend's car left the parking lot soon thereafter.

The victim testified, without objection, that she told her sister about the incident a few days later:

> THE STATE: Now, moving along, when did you decide to finally tell someone that it happened?
>
> THE VICTIM: I decided to tell someone a couple days after because I just – I had to get it out and I had to tell someone that I didn't want to get into trouble.

2

THE STATE: So who did you tell?

THE VICTIM: My sister.

THE STATE: Okay. And without telling me what your sister told you, based on the conversation with your sister, what did you do next?

THE VICTIM: Um, she helped me tell my mom, me and my mom together. We told her together and after that, me and my mother, my stepfather, and [my boyfriend's] parents headed down to the Miramar Police Department to file, I guess a complaint or case.

THE STATE: Did you want to tell your mom?

THE VICTIM: No.

THE STATE: Did you want your sister to tell your mom?

THE VICTIM: No.

THE STATE: Did you want your mom to find out about this at all?

THE VICTIM: No.

THE STATE: Did you tell your sister not to tell your mom?

THE VICTIM: Yes.

The sister also testified, over appellant's objection, that the victim spoke to her about the incident with appellant. She described the victim as "devastated" during their conversation: "She was balling [sic], crying. She couldn't get a word out. It was difficult to hear what she had to say." Even though the victim did not want to tell their mother, the sister testified that she insisted that they tell her. When they did, the mother notified the police.

Appellant argues that the trial court erred when it allowed the victim's sister to testify that the victim told her about her encounter with appellant and that she urged the victim to tell their parents. Appellant contends that the sister's testimony was improperly admitted as a prior consistent

3

statement and that it unfairly bolstered the victim's credibility.

The state responds that, because neither girl testified as to the substance of the statements the victim made during their conversation about the incident, their testimony did not constitute hearsay. According to the state, both witnesses were completely silent about the specifics of their conversation, because the prosecutor scrupulously complied with the trial court's instructions not to elicit any hearsay testimony when examining them. The sister's testimony was limited to the fact that the victim told her about the incident and to her observations of the victim's demeanor when she described the incident. The sister also testified that it was her decision to tell their mother about the encounter because the victim did not want to. The prosecutor asserted that her purpose in asking the sister whose idea it was to tell the mother was to show that, contrary to appellant's opening statement, the victim was not fabricating the allegation to protect herself.

"A trial court is given broad discretion in determining whether to admit or exclude evidence, but its discretion is limited and governed by the statutory Evidence Code." *Neal v. State*, 50 So. 3d 96, 97 (Fla. 4th DCA 2010). Section 90.801(1)(c), Florida Statutes (2012), defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

As discussed above, the state argues that the sister's testimony was not hearsay because she did not testify as to the substance of the victim's out-of-court statements. Our review of the trial transcripts confirms that the sister did not testify about what the victim told her. Further, the record shows that the state did not introduce evidence of the victim's "statement" to her sister in order to prove the statement's truth, but rather to show that a statement was made and that the victim reported the incident to someone just a few days after it happened. *See Mercer v. State*, 835 So. 2d 1273, 1274 (Fla. 4th DCA 2003) (holding that testimony as to what the police told the witness about the crime was not inadmissible hearsay, because it was not offered to prove the truth of the statements by the police). The sister's testimony that she urged the victim to report the incident to her mother likewise was not offered in evidence to prove the truth of the matter asserted.

The state also introduced evidence that the victim made a statement to her sister to lay a foundation for evidence of the victim's troubled demeanor when discussing the incident with her sister. The sister's testimony did not concern the content of the victim's disclosure, but rather

4

her mental and emotional state. This demeanor evidence was not hearsay, but instead a fact-based observation by a witness subject to cross-examination. *See State v. Sulloway*, 90 A.3d 605, 612–13 (N.H. 2014) (holding that testimony of the sexual assault victim's stepfather regarding the victim's demeanor at the time of disclosure of the assault was not inadmissible hearsay).

In this case, we find the following observations of the District of Columbia Court of Appeals to be instructive:

> [T]he relevance of the complainant's demeanor does not depend on the truthfulness of [his or] her report [of sexual assault]—the trier of fact is not required to consider the report's truth to evaluate the probative value of the complainant's demeanor. Rather, the complainant's demeanor when discussing the subject is independent evidence that [he or] she was the victim of a sexual assault, just as a physical injury might constitute such evidence.

*Sulloway*, 90 A.3d at 613 (alterations in original) (quoting *Garibay v. United States,* 72 A.3d 133, 137–38 (D.C. 2013)).

We have held that testimony regarding a sexual assault victim's demeanor is admissible when relevant. *See Elysee v. State*, 920 So. 2d 1205, 1208 (Fla. 4th DCA 2006) (holding that testimony of the victim's mother as to the victim's morose behavior in days following an alleged sexual assault was not irrelevant as a matter of law where the theory of defense was that the victim had made up the story because the defendant had rejected her advances).

Here, we conclude that testimony of the victim's sister regarding the victim's demeanor at the time she reported the incident to her was relevant, where appellant's theory of defense was that the victim fabricated the encounter with appellant to cover up her ongoing sexual relationship with her adult boyfriend. The testimony of the sister was brief. However, as we did in *Elysee,* we again "caution that the prejudicial impact of this type of evidence could, under different circumstances, outweigh its probative value." 920 So. 2d at 1208–09 (citing § 90.403, Fla. Stat.).

We hold that the trial court did not err in admitting non-hearsay evidence regarding the victim's reporting the incident to her sister, the victim's demeanor during the disclosure, and the sister's suggestion to report the incident to their mother. Accordingly, we affirm appellant's conviction and sentence for lewd or lascivious conduct on a person under

the age sixteen.

C<span>IKLIN</span>, C.J., and K<span>LINGENSMITH</span>, J., concur.

\*　　　\*　　　\*

*Not final until disposition of timely filed motion for rehearing.*